*1002 PER CURIAM.
Carlos Del Valle seeks review of the decision of the Third District Court of Appeal in Del Valle v. State, 994 So.2d 425 (Fla. 3d DCA 2008), on the basis that it expressly and directly conflicts with decisions of the Second, Fourth, and Fifth District Courts of Appeal in Blackwelder v. State, 902 So.2d 905 (Fla. 2d DCA 2005), Shepard, v. State, 939 So.2d 311 (Fla. 4th DCA 2006), and Osta v. State, 880 So.2d 804 (Fla. 5th DCA 2004). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
These cases present two separate questions of law regarding probation revocation for failure to pay restitution: (1) whether a trial court, before finding a violation of probation for failure to pay restitution, must inquire into the probationer’s ability to pay and determine whether the failure to pay was willful; and (2) whether the burden-shifting scheme of section 948.06(5), Florida Statutes (2011),[1] which places the burden on the probationer to prove his or her inability to pay by clear and convincing evidence, is constitutional. Regarding the first issue, the underlying constitutional principle is that an indigent probationer should not be imprisoned based solely on inability to pay a monetary obligation. Based on our fidelity to this principle, we approve the holdings of all the district courts of appeal, except the Third District, that before a trial court may properly revoke probation and incarcerate a probationer for failure to pay, it must inquire into the probationer’s ability to pay and determine whether the probationer had the ability to pay but willfully refused to do so. Under Florida law, the trial court must make its finding regarding whether the probationer willfully violated probation by the greater weight of the evidence.
As to the second issue, an automatic revocation of probation without evidence presented as to ability to pay to support the trial court’s finding of willfulness violates due process. Accordingly, the State must present sufficient evidence of willfulness, including that the probationer has, or has had, the ability to pay, in order to support the trial court’s finding that the violation was willful. Once the State has done so, it is constitutional to then shift the burden to the probationer to prove inability to pay to essentially rebut the State’s evidence of willfulness. However, while it is constitutional to place the burden on the probationer to prove inability to pay, the aspect of section 948.06(5) that requires the probationer to prove inability to pay by the heightened standard of clear and convincing evidence is unconstitutional.
FACTS
Del Valle was charged with possession of cocaine and an unrelated, subsequent charge of third-degree grand theft. Del Valle was declared indigent, appointed a public defender, and ultimately entered a plea in each case, which resulted in his placement on probation for two years. As a condition of probation, Del Valle was responsible for paying $1,809.90 in restitution (at the rate of $80 per month) and an additional $25 per month toward the cost of supervision.
On February 14, 2008, an affidavit of violation of probation was filed, which alleged that Del Valle failed to make the required monthly payments and was $375 in arrears with respect to the cost of su *1003 pervision and $1,040.92 in arrears with respect to the payment of restitution. The violation report attached to the affidavit of violation classified Del Valle as unemployed and indicated that he was provided with a job referral and job search log. Further, one section of the probation report read: “Subject stated that he is attending Miami-Dade College for his Associate Degree but has failed to bring in documentation that he is attending the college.”
Following the filing of the affidavit of violation of probation, the State offered to reinstate Del Valle to probation. However, during a July 17, 2008, hearing, the trial court rejected probation alone and required any offer by the State to include boot camp as a condition of probation. The State was not ready to proceed, so the case was continued and Del Valle was released on his own recognizance.
On August 7, 2008, another probation violation hearing was held. At the hearing, the State offered the testimony of two of Del Valle’s probation officers. One officer testified that he informed Del Valle of the terms of his probation, including both the restitution payment and the obligation to pay a monthly cost of supervision. The second officer then testified that Del Valle was in arrears for both restitution and cost of supervision. After the testimony of both officers, the defense presented no witnesses, and after a brief recess the court found that “the state has sustained its burden of proof in proving both affidavits of violation of probation.” The court further modified the probation to include “the special condition that he enter into and complete the Miami-Dade County Boot Camp Program, including the after care.”[2] The court then also extended the probation for two years with early termination upon successful completion of the boot camp program. The following colloquy then ensued:
[State Attorney]: Is your Honor going to enter a criminal order of restitution, or is Mr. Del Valle continued to be ordered to pay until he surrenders October 27th his restitution amount?
The Court: Yes, but I might reduce the amount each month. How much can you pay each month, Mr. Del Valle?
[Del Valle]: I try to pay eighty or more a month.
The Court: What is the amount you are sure you can pay?
[Del Valle]: If I get a job within this week, eighty a month. The minimum is eighty.
The Court: We will leave those special conditions in effect.
Del Valle appealed the decision of the trial court to the Third District Court of Appeal. The Third District affirmed the trial court, stating in full:
Affirmed. See Gonzales v. State, 909 So.2d 960, 960 (Fla. 3d DCA 2005) (“If the probationer’s defense is inability to pay, ‘it is incumbent upon the probationer or offender to prove by clear and convincing evidence that he or she does not have the present resources available to pay restitution or the cost of supervision despite sufficient bona fide efforts *1004 legally to acquire the resources to do so.’ § 948.06(5), Fla. Stat. (2004)”).
Del Valle v. State, 994 So.2d 425, 425 (Fla. 3d DCA 2008).
In direct conflict, the Second, Fourth, and Fifth District Courts of Appeal have held that the burden of proof is on the State to establish that the probationer has the ability to pay in order to demonstrate the willfulness of the violation. See Shepard v. State, 939 So.2d 311, 313 (Fla. 4th DCA 2006) (“It is well-settled that probation may be revoked only upon a showing that the probationer deliberately and willfully violated one or more conditions of probation.”); Blackwelder v. State, 902 So.2d 905, 907 (Fla. 2d DCA 2005) (“[T]he State is required to present evidence of the probationer’s ability to pay to demonstrate the willfulness of the violation.”); Osta v. State, 880 So.2d 804, 807 (Fla. 5th DCA 2004) (“[I]n order to revoke probation for failure to pay restitution the burden is on the State to prove the ‘willfulness’ of the violation....”).
In addition, the Third District conflicts with the other district courts of appeal as to whether the trial court must make a finding on the probationer’s ability to pay before revoking probation for failure to pay. The Third District has held that although a trial court should make a finding on ability to pay, the failure to do so is harmless when the probationer fails to assert and offer evidence on his or her inability to pay. Guardado v. State, 562 So.2d 696, 696-97 (Fla. 3d DCA 1990). All of the district courts of appeal other than the Third District have held that the tidal court must make a finding that the probationer had the ability to pay before probation can be revoked for failure to pay. See Limbaugh v. State, 16 So.3d 954, 955 (Fla. 5th DCA 2009) (“It is well-established that where the violation alleged by the State is a failure to pay costs or restitution, there must be evidence presented, and a finding of the trial court that the probationer had the ability to pay, but willfully did not do so.”); Brown v. State, 6 So.3d 671, 672 (Fla. 2d DCA 2009) (“[B]efore finding that Brown violated condition 2, failure to pay the cost of supervision, the trial court was required to find that Brown had the ability to make the required payments.”); Shepard, 939 So.2d at 314 (“[W]here the violation alleged is a failure to pay costs or restitution, there must be evidence and a finding that the probationer had the ability to pay.”); Martin v. State, 937 So.2d 714, 715 (Fla. 1st DCA 2006) (“Revoking probation for failure to pay costs without a finding that the probationer had the ability to pay requires reversal.”).
ANALYSIS

Preservation and Mootness

The State initially claims that Del Valle did not properly preserve his objections and that the case is moot. These arguments have no merit. “For an issue to be preserved for appeal ... it must be presented to the lower court and the specific legal argument or ground to be argued on appeal must be part of that presentation if it is to be considered preserved.” Archer v. State, 613 So.2d 446, 447 (Fla.1993) (internal quotation marks omitted). However, harmful due process violations are fundamental error, which need not be preserved for review. See State v. Johnson, 616 So.2d 1, 3 (Fla.1993) (“[F]or an error to be so fundamental that it can be raised for the first time on appeal, the error must be basic to the judicial decision under review and equivalent to a denial of due process.”); Wood v. State, 544 So.2d 1004, 1005 (Fla.1989) (“[S]uch due process violations are fundamental error.”).
*1005 The State’s mootness argument must also fail. Although we recognize that Del Valle’s probation has already been terminated by the trial court, “[i]t is well settled that mootness does not destroy an appellate court’s jurisdiction ... when the questions raised are of great public importance or are likely to recur.” Holly v. Auld, 450 So.2d 217, 218 n. 1 (Fla.1984). Here, as a direct result of the conflict among the districts, whether a probationer may be incarcerated due to indigence can be based solely on the probationer’s geographic location. This conflict has already existed for too long and has escaped review for a number of years. Further, probation revocation hearings that flow from a probationer’s failure to make ordered payments are common and thus are likely to recur. Accordingly, we will consider the questions of law presented here.

Constitutional Principles

The Equal Protection and Due Process Clauses of the United States Constitution ensure that an indigent probationer is not incarcerated based solely upon inability to pay a monetary obligation. See Bearden v. Georgia, 461 U.S. 660, 664, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); U.S. Const. amends. V, XIV. Further, the Florida Constitution contains its own due process clause that parallels the language of the Fourteenth Amendment and states that “[n]o person shall be deprived of life, liberty or property without due process of law.” Art. I, § 9, Fla. Const. The Florida Constitution contains a separate and specific provision that ensures that “[n]o person shall be imprisoned for debt, except in cases of fraud.” Art. I, § 11, Fla. Const.
In Bearden, although under different factual conditions, the United States Supreme Court explained the circumstances under which the State is justified in using imprisonment as a sanction to enforce collection:
If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection.... But if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available.
461 U.S. at 668-69, 103 S.Ct. 2064 (emphasis added) (footnote omitted) (citation omitted). Thus, the United States Supreme Court clearly established the following principle:
[I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State’s interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Stick a deprivation would be contrary to thefundamen- *1006 tal fairness required by the Fourteenth Amendment.
Id. at 672-73, 103 S.Ct. 2064 (emphasis added).
This Court analyzed and applied Bear-den in Stephens v. State, 630 So.2d 1090, 1091 (Fla.1994), articulating a clear rule: “We agree and hold that, before a person on probation can be imprisoned for failing to make restitution, there must be a determination that that person has, or has had, the ability to pay but has willfully refused to do so.” With these important constitutional principles in mind, we now turn to the applicable statutory provisions regarding restitution.

Applicable Statutory Provisions Regarding Restitution

Under the statutory scheme, there are three potential proceedings regarding restitution: (1) when the trial court assesses and orders restitution (§ 775.089(1), (6)(a), Fla. Stat. (2011)); (2) when the State or the victim attempts to enforce the restitution order (§ 775.089(5), (6)(b), Fla. Stat.); and (3) if the defendant is placed on probation, when the trial court considers revoking probation based on the defendant’s failure to pay restitution as ordered (§§ 948.032, 948.06(5), Fla. Stat. (2011)).
At the outset, it is important to consider that the defendant’s financial resources or ability to pay does not have to be established when the trial court assesses and imposes restitution. To the contrary, section 775.089(6)(a), Florida Statutes (2011), provides: “The court, in determining whether to order restitution and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense.” A trial court is required to order restitution in addition to any punishment unless it finds “clear and compelling reasons” not to do so. § 775.089(l)(a), Fla. Stat. (2011). The court is also required to make payment of restitution a condition of probation in accordance with section 948.03, Florida Statutes (2011). That section, entitled “Terms and conditions of probation,” states that the trial court “shall” make “restitution a condition of probation, unless it determines that clear and compelling reasons exist to the contrary.” § 948.03(l)(f), Fla. Stat. Further, under both sections 775.089(l)(b)l. and 948.03(l)(f), if the court “does not order restitution or orders restitution of only a portion of the damages ... it shall state on the record in detail the reasons therefor.”
Prior to the current version of the statute, which has been in effect since 1995, the trial court was affirmatively required to consider the defendant’s financial resources when imposing restitution:
The court, in determining whether to order restitution and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the present and potential future financial needs and earning ability of the defendant and his dependents, and such other factors which it deems appropriate.
§ 775.089(6), Fla. Stat. (1993) (emphasis added).
In 1995, the Legislature amended the restitution statute to require consideration of a defendant’s financial resources only at the time of enforcement, not imposition. See ch. 95-160, § 1, Laws of Fla. When amending the statute in 1995, the Legislature stated, among other things, that the act amending the statute was “imposing liability for court costs and attorney’s fees upon defendant when civil enforcement of restitution order is necessary; providing for review at such time of the defendant’s financial resources by the criminal court.” *1007 Ch. 95-160, title, Laws of Fla. The statute as amended now provides:
(6)(a) The court, in determining whether to order restitution and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense.
(b) The criminal court, at the time of enforcement of the restitution order, shall consider the financial resources of the defendant, the present and potential future financial needs and earning ability of the defendant and his or her dependents, and such other factors which it deems appropriate.
§ 775.089(6), Fla. Stat. (2011). In other words, the Legislature shifted consideration of the financial resources of the defendant to the time of any enforcement of the restitution order and sent a clear message that at the time of the determination of the amount of restitution, the trial court should consider only the victim’s loss in imposing restitution. Thus, since 1995, the trial court has been required to consider the defendant’s financial resources when a restitution order is being enforced — not when restitution is being imposed. See State v. Shields, 31 So.3d 281, 282 (Fla. 2d DCA 2010) (“[AJbility to pay the amounts ordered is a factor to be considered at the time of enforcement, not at imposition.”); Owens v. State, 679 So.2d 44, 45 (Fla. 1st DCA 1996) (“[A] defendant’s ability to pay is to be considered only when there is an attempt to enforce the restitution order.”); Nieves v. State, 678 So.2d 468, 470 (Fla. 5th DCA 1996) (“[Effective May 8, 1995, section 775.089(6) was amended to provide that financial resources and ability to pay restitution shall be considered at the time of enforcement of a restitution order, rather than at the time restitution is ordered.”); cf. Banks v. State, 732 So.2d 1065, 1069-70 (Fla.1999) (“The [district] court added: ‘[T]he trial court made no finding of Banks’ ability to pay restitution, as we [have] held to be necessary....’ [State v. Banks, 712 So.2d 1165, 1166 (Fla. 2d DCA 1998).] This was error.... [A] defendant’s ability to pay restitution is a nonissue when the court is weighing the need for restitution versus the need for imprisonment. Section 775.089(6), Florida Statutes (1995), provides that ability to pay shall be considered at the time of enforcement of a restitution order — not at the time when the court is weighing the respective needs.”).[3]
An enforcement proceeding arises when either the State or the victim seek to enforce the order. Section 775.089(5) provides: “An order of restitution may be enforced by the state, or by a victim named in the order to receive the restitution, in the same manner as a judgment in a civil action.” § 775.089(5), Fla. Stat. *1008 (2011); see also § 960.001(l)(j), Fla. Stat. (2011) (“Law enforcement agencies and the state attorney shall inform the victim of the victim’s right to request and receive restitution pursuant to s. 775.089 or s. 985.437, and of the victim’s rights of enforcement under ss. 775.089(6) and 985.0301 [4] in the event an offender does not comply with a restitution order.”).
A trial court is required to consider the defendant’s financial resources during an enforcement proceeding. Section 775.089(6)(b) requires the trial court, “at the time of the enforcement of the restitution order,” to “consider the financial resources of the defendant, the present and potential future financial needs and earning ability of the defendant and his or her dependents, and such other factors which it deems appropriate.” § 775.089(6)(b), Fla. Stat. (emphasis added).
Section 775.089(7), Florida Statutes, discusses the applicable burdens:
Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense is on the state attorney. The burden of demonstrating the present financial resources and the absence of potential future financial resources of the defendant and the financial needs of the defendant and his or her dependents is on the defendant. The burden of demonstrating such other matters as the court deems appropriate is upon the party designated by the court as justice requires.
However, it is noteworthy that the resolution of the issue is only by the preponderance of the evidence, and in enforcement proceedings, the statute does not impose a higher burden on the defendant to demonstrate his or her financial resources even though his or her liberty is not at stake.
Although all orders of restitution may be enforced through civil enforcement proceedings, if a defendant is placed on probation, restitution is required to be ordered as a condition of probation. We thus turn to the statutes that govern restitution as a condition of probation, which is where the probationer’s liberty may be affected by the failure to pay. For a defendant placed on probation, “any restitution ordered under s. 775.089 shall be a condition of the probation.” § 948.032, Fla. Stat. (2011). If the defendant fails to comply with the order, the court may revoke probation. Id.
The probationer’s financial resources are considered when the trial court is determining whether to revoke probation. Significantly, section 948.032, Florida Statutes, provides: “In determining whether to revoke probation, the court shall consider the defendant’s employment status, earning ability, and financial resources; the willfulness of the defendant’s failure to pay; and any other special circumstances that may have a bearing on the defendant’s ability to pay.” Id. This statute was enacted in 1984,[5] shortly after Bearden was decided.
Section 948.06, Florida Statutes, the statute at issue in this case, governs probation revocation proceedings. Subsection (5) of that statute specifically addresses probation revocation when a probationer has failed to pay restitution and places the burden on the probationer to assert and demonstrate inability to pay by clear and convincing evidence:
*1009 In any hearing in which the failure of a probationer or offender in community control to pay restitution or the cost of supervision as provided in s. 948.09, as directed, is established by the state, if the probationer or offender asserts his or her inability to pay restitution or the cost of supervision, it is incumbent upon the probationer or offender to prove by clear and convincing evidence that he or she does not have the present resources available to pay restitution or the cost of supervision despite sufficient bona fide efforts legally to acquire the resources to do so. If the probationer or offender cannot pay restitution or the cost of supervision despite sufficient bona fide efforts, the court shall consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the state’s interests in punishment and deterrence may the court imprison a probationer or offender in community control who has demonstrated sufficient bona fide efforts to pay restitution or the cost of supervision.
§ 948.06(5), Fla. Stat. (2011). This provision in the statute was added in 1984 as section 948.06(4). See ch. 84-337, § 3, Laws of Fla. The provision remains substantively the same today as when it was enacted.[6]

Determination of Willfulness

We next turn to the requirement that the trial court make a determination of willfulness and whether a failure to make such a determination can be considered harmless error, as the Third District has held, or constitutes fundamental error, as the First District has held. We generally apply an abuse of discretion standard when reviewing a trial court’s decision to revoke probation. See Lawson v. State, 969 So.2d 222, 229 (Fla.2007). Here, however, the issue presented is a question of law, and we apply a de novo standard of review. See id. In this case, we review the statutory scheme, construing related statutes in pari materia, and also consider the guiding constitutional principles espoused in Bearden and Stephens.
The First District has held that although the burden of proving inability to pay shifts to the probationer after the State establishes nonpayment, the trial court must make an inquiry and determination with regard to the probationer’s ability to pay. See Martin v. State, 937 So.2d 714, 715-16 (Fla. 1st DCA 2006). In fact, the First District has held that the failure of the trial court to make a finding of willfulness is reversible error:
Section 948.06(5) does not relieve the trial court of its duty to determine that the violation was willful by proving the probationer’s ability to pay. Martin, 937 So.2d at 716; Blackwelder v. State, 902 So.2d 905, 907 n. 1 (Fla. 2d DCA 2005). Because ability to pay is an essential element for a finding that a probationer willfully violated probation for failure to pay supervisory costs, the revocation of Appellant’s probation based on the alleged violation of Condition (2) constitutes fundamental error. Hobson[ v. State], 908 So.2d [1162,] 1164 [ (Fla. 1st DCA 2005) ]. In Friddle v. State, 989 So.2d 1254, 1255 (Fla. 1st DCA 2008), we held that revoking the defendant’s probation based on his failure to pay restitution, without a specific finding that he had the ability to pay, compelled reversal. For the same rea *1010 son, the finding that Appellant willfully-violated Condition (2) must be stricken from the probation revocation order.
Odom v. State, 15 So.3d 672, 678 (Fla. 1st DCA 2009).
Conversely, the Third District, while acknowledging the necessity of a determination of ability to pay, has concluded that the failure of a trial court to make this determination is harmless, thus eroding the underlying constitutional principle expressed in Bearden that a probationer may not be deprived of his conditional freedom simply because, through no fault of his own, he cannot pay a monetary obligation. In Guardado, 562 So.2d at 696-97, the Third District stated:
With regard to the third ground, failure to make payments for the cost of supervision, it is true that there should have been a finding of ability to pay. See Brown v. State, 537 So.2d 180, 181 (Fla. 3d DCA 1989). However, under subsection 948.06(4), Florida Statutes (1989),[7] inability to pay the cost of supervision is a defense which the probationer must prove by clear and convincing evidence. Guardado offered no evidence whatsoever on that issue. That being so, the failure to make a specific finding was harmless.
The Third District’s holding that the failure of a trial court to make a specific finding of ability to pay is harmless directly contradicts the clear rule established by this Court in Stephens and the rationale upon which the principle of law announced by the United States Supreme Court’s decision in Bearden is based. The specific question addressed in Bearden was “whether a sentencing court can revoke a defendant’s probation for failure to pay the imposed fine and restitution, absent evidence and findings that the defendant was somehow responsible for the failure or that alternative forms of punishment were inadequate.” Bearden, 461 U.S. at 665, 103 S.Ct. 2064 (emphasis added). In answering that question in the negative, the Supreme Court clearly articulated its belief that a specific inquiry with regard to ability to pay is required to pass constitutional scrutiny:
We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay.... To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.
Bearden, 461 U.S. at 672-73, 103 S.Ct. 2064.
Chief Justice Canady’s dissent ascribes too narrow and limited a reading to Bear-den and fails to recognize the important constitutional principles announced in that decision. Far from “simply constituting] a recognition that the reasons for failure to pay are relevant to whether revocation is proper and that it is impermissible to preclude consideration of those reasons,” dissenting op. at 1017 (emphasis added), Bearden clearly mandates that “a sentencing court must inquire into the reasons for the failure to pay” in revocation proceedings for failure to pay a fine or restitution, Bearden, 461 U.S. at 672, 103 S.Ct. 2064 (emphasis added). Likewise, this Court in Stephens, 630 So.2d at 1091, recognized that in Bearden, “the [United States Supreme] Court held that a court must in *1011 vestigate the reasons for failing to pay a fine or restitution in probation revocation proceedings.” (Emphasis added.) This Court did not simply “[r]eeogniz[e] the illegality of ... an unconditional plea agreement waiver by a probationer,” dissenting op. at 1017, in Stephens, but instead unmistakably held that “before a person on probation can be imprisoned for failing to make restitution, there must be a determination that that person has, or has had, the ability to pay but has willfully refused to do so.” 630 So.2d at 1091.
Regardless of whether the State or the probationer has the burden of proof with regard to ability, or inability, to pay, both this Court and the United States Supreme Court have made it abundantly clear that there must be both an inquiry into a probationer’s ability to pay and a determination of willfulness. This flows from both state and federal constitutional requirements. The Third District’s holding in Guardado ignores the inquiry required by Bearden, which, according to that opinion, is necessary “[wjhether analyzed in terms of equal protection or due process.” Bearden, 461 U.S. at 666, 103 S.Ct. 2064. Further, Guardado is inconsistent with this Court’s requirement expressed in Stephens regarding a specific finding of willfulness. A probationer cannot have his probation constitutionally revoked absent an inquiry into ability to pay and a specific finding of willfulness, and a trial court’s failure to conduct such an inquiry or make such a finding cannot be deemed harmless. Although Guardado was decided prior to this Court’s decision in Stephens, it has been improperly extended and relied on in decisions rendered after Stephens, including Gonzales, upon which the Third District relied in Del Valle. See, e.g., Del Valle, 994 So.2d at 425 (citing Gonzales, 909 So.2d at 960); Gonzales, 909 So.2d at 960 (citing Guardado, 562 So.2d at 696-97).
The absence of a specific finding of willfulness in a probation revocation proceeding cannot be considered harmless error. An automatic revocation of probation without such a finding would be unconstitutional. To comply with the rules set forth in Bearden and Stephens, trial courts must inquire into a probationer’s ability to pay and make an explicit finding of willfulness based on the greater weight of the evidence. The failure to comport with these requirements constitutes fundamental error.
We emphasize that the probationer’s ability to pay is an element of willfulness in the context of determining whether there is a willful violation for failure to pay a monetary obligation as a condition of probation. See Odom, 15 So.3d at 678-79 (“[AJbility to pay is an essential element for a finding that a probationer willfully violated probation for failure to pay....”). As stated by this Court in Stephens, 630 So.2d at 1091, there must be a determination that the probationer has, or has had, the ability to pay but has willfully refused to do so. Thus, the trial court must inquire into a probationer’s ability to pay before determining willfulness.

Constitutionality of Section 948.06(5)

We next turn to the constitutional validity of the burden-shifting scheme of section 948.06(5). We first address the failure of section 948.06(5) to require the State to establish willfulness; and second, the constitutional validity of the requirement in section 948.06(5) that the probationer prove inability to pay by the heightened standard of clear and convincing evidence.
1. Constitutionality of Not Requiring the State to Establish Willfulness
The general principle in probation revocation proceedings is that “the burden is on the state to establish that the probationer willfully violated the terms of *1012 his probation.” Howard v. State, 484 So.2d 1232, 1233 (Fla.1986).[8] The trial court must “consider each violation on a case-by-case basis for a determination of whether, under the facts and circumstances, a particular violation is willful and substantial and is supported by the greater weight of the evidence.” State v. Carter, 835 So.2d 259, 261 (Fla.2002). Although a defendant has fewer protections in probation proceedings than in criminal proceedings, we must always be mindful that the potential consequence of the probation violation is the incarceration of the probationer for a long period of time.
Before a trial court can revoke probation, it must find that the probationer willfully and substantially violated a condition of probation. In probation revocation proceedings for failure to pay a monetary obligation as a condition of probation, the trial court must find that the defendant’s failure to pay was willful — i.e., the defendant has, or has had, the ability to pay the obligation and purposefully did not do so. See Bearden, 461 U.S. at 668-69, 103 S.Ct. 2064; see also Stephens, 630 So.2d at 1091 (“[BJefore a person on probation can be imprisoned for failing to make restitution, there must be a determination that that person has, or has had, the ability to pay but has willfully refused to do so.”). “If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection.” Bearden, 461 U.S. at 668, 103 S.Ct. 2064. Accordingly, if the State seeks to revoke probation on the basis of failure to pay, it must introduce evidence on the probationer’s ability to pay that would support the trial court’s finding of willfulness.
The plain text of section 948.06(5), however, does not expressly address this requirement but only requires the State to establish failure to pay before the burden of proof shifts to the defendant to prove inability to pay. The absence of any recognition or mention of the element of willfulness as a first step in section 948.06(5) could alone render the statute unconstitutional.
Reading section 948.06(5) without the constitutionally required element would undermine its validity, and, therefore, we have an obligation to give the *1013 statute a constitutional construction where such a construction is possible. See Tyne v. Time Warner Entm’t Co., 901 So.2d 802, 810 (Fla.2005). The problem with section 948.06(5) is not what is in the statute, but rather what is not.
Section 948.06(5) can be reconciled with Stephens and Bearden by simply reading into the statute the recognized element that there must be evidence presented of willfulness and construing it in pan mate-ria with section 948.032, Florida Statutes (2011), which requires the trial court, when revoking probation, to consider the probationer’s employment status, earning ability, financial resources, willfulness of failure to pay, and any other special circumstances that may have a bearing on the probationer’s ability to pay. Construing these statutes in pari materia preserves section 948.06(5) and the Legislature’s intent to shift the burden of proving inability to pay to the defendant, while at the same time respecting the underpinning of the constitutional requirement of a determination of willfulness as enunciated in Bearden and Stephens.
Accordingly, we hold that before the burden shifts to the defendant to prove inability to pay, the State must provide sufficient evidence that would support a trial court’s finding that the probationer willfully failed to pay a monetary obligation, which would include whether the probationer has, or has had, the ability to pay the obligation.
2. Constitutionality of Placing the Burden on the Probationer to Prove Inability to Pay
Once the State has established sufficient evidence for the trial court to make a determination of willfulness, under the statute, the burden is then on probationer to prove inability to pay. We consider this issue in the context of the constitutional protections afforded to the probationer. Although protection guaranteed to probationers in revocation hearings are less than those in criminal proceedings, probation revocation proceedings that result in a deprivation of liberty must comport with the due process clauses of both the Florida and United States Constitutions. The requirement that a willful and substantial violation of probation be found before probation can be revoked is rooted in the fundamental fairness notion required by due process. The United States Supreme Court has stated that “depriv[ing] the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine” would be “contrary to the fundamental fairness required by the Fourteenth Amendment.” Bearden, 461 U.S. at 672-73, 103 S.Ct. 2064. The Florida Constitution also explicitly provides: “No person shall be imprisoned for debt, except in cases of fraud.” Art. I, § 11, Fla. Const. Thus, the due process clause of the Fourteenth Amendment and the corresponding provisions of the Florida Constitution mandate that certain protections be in place.
We conclude that because the State is required to produce sufficient evidence in order for the trial court to make a determination of willfulness, shifting the burden to the probationer to then rebut this is constitutionally permissible. However, we conclude that the higher burden of clear and convincing evidence imposed on the probationer cannot withstand constitutional scrutiny under these circumstances.
Although the standard for proving a probation violation is the preponderance of the evidence, the defendant is required to meet a heightened burden of clear and convincing evidence to establish inability to pay. This imbalance in the scales of justice is even more significant considering the following: (1) when imposing restitu *1014 tion, the trial court no longer (as of 1995) considers the financial resources of the defendant and must impose restitution unless there are “clear and compelling reasons” not to do so; and (2) in a civil enforcement action where incarceration is not at stake, the probationer is held only to a preponderance of the evidence standard to demonstrate his or her financial resources. We further consider that the Legislature has not amended section 948.06(5) with respect to placing the burden on the probationer to prove inability to pay by clear and convincing evidence since adding the requirement in 1984 — at which time the financial resources of the defendant were a factor that the trial court was required to consider at the time that restitution was assessed and imposed.
This higher standard placed on the probationer distinguishes this case from those in the criminal context where the State bears the burden to prove the crime beyond a reasonable doubt — a higher standard than “clear and convincing.” Accordingly, although at least one affirmative defense requires a defendant to prove the defense by clear and convincing evidence,[9] that standard is actually lower than the standard imposed on the State in that context. Here, however, it is the opposite: the probationer bears the higher standard of proof to rebut the State’s case.
As articulated by the United States Supreme Court in Cooper v. Oklahoma, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996), the “more stringent the burden of proof a party must bear, the more that party bears the risk of an erroneous decision.” Id. at 362, 116 S.Ct. 1373 (quoting Cruzan v. Director, Mo. Dep’t of Health, 497 U.S. 261, 283, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990)). We conclude that imposing a burden of clear and convincing evidence on the probationer creates an impermissible risk that a person will be imprisoned simply because, through no fault of his or her own, he or she cannot pay the monetary obligation. Such an error is one of constitutional magnitude, “contrary to the fundamental fairness required by the Fourteenth Amendment” of the United States Constitution, Bearden, 461 U.S. at 673, 103 S.Ct. 2064, and in violation of the Florida Constitution. See art. I, § 11, Fla. Const.
The State points to many jurisdictions that have upheld the practice of shifting the burden to prove inability to pay to the probationer. However, we note that these jurisdictions do not shift the burden to the defendant to prove inability to pay by the heightened standard of clear and convincing evidence.[10] Further, the Florida Constitution contains explicit protection against imprisonment for debt. Thus, the *1015 provision requiring the probationer to prove inability to pay by clear and convincing evidence is constitutionally infirm because it requires the defendant to bear a greater risk of an erroneous decision resulting in imprisonment for debt, despite an explicit protection in Florida’s Constitution against imprisonment for debt. See art. I, § 11, Fla. Const. This risk is constitutionally unacceptable.

This Case

In this case, the trial court found a ■violation of probation based on Del Valle’s failure to pay restitution and costs, but did not inquire into Del Valle’s ability to pay or his financial resources before finding a violation of probation and ordering that Del Valle attend boot camp. The only evidence presented as to the violation was that Del Valle had been informed of the terms of his probation and that he was in arrears of both the restitution amount and the costs of supervision. Although the trial court failed to make an inquiry into ability to pay or a finding of willfulness before modifying Del Valle’s probation, the Third District, relying on its prior opinion in Guardado, affirmed the trial court’s order, apparently finding the trial court’s failure to conduct an inquiry or make a finding of willfulness to be harmless.
Rather than establishing that Del Valle willfully violated his probation, the evidence in the record reveals that after the violation of probation was found and boot camp was ordered, he was asked by the trial court what he could pay per month. Del Valle responded he would “try to pay ‘eighty or more a month’ ” “[i]f I get a job within the week.”[11] There was no inquiry into whether he had tried previously to obtain employment or whether he had any other financial resources with which to pay the restitution.
In short, Del Valle’s probation violation and the trial court’s order requiring Del Valle to complete the boot camp program were based on nothing more than his failure to pay restitution, without regard as to whether he had the ability to pay but had willfully refused to do so. This is contrary to the constitutional principles espoused in Bearden and Stephens and contrary to the Florida Constitution’s protection against imprisonment for debt.
CONCLUSION
In accordance with our analysis above, we conclude that, as held by this Court in Stephens and the United States Supreme Court in Bearden, before a probationer can be imprisoned for failure to pay a monetary obligation such as restitution, the trial court must inquire into a probationer’s ability to pay and make an explicit finding of willfulness based on the greater weight of the evidence. Further, in all probation revocation proceedings in which the violation alleged is a failure to pay a monetary obligation as a condition of the probation, we hold that the State must present sufficient evidence of the probationer’s willfulness, which includes evidence on ability to pay, to support the trial court’s finding of willfulness. After evidence of willfulness is introduced by the State, the burden may then be properly shifted to the probationer to assert and prove inability to pay. However, we hold that it is unconstitutional to require the probationer to prove inability to pay by clear and convincing evidence — a higher burden than the burden required of the State to prove the violation.
*1016 Accordingly, we quash the decision of the Third District below and further disapprove Gonzales v. State, 909 So.2d 960 (Fla. 3d DCA 2005), and Guardado v. State, 562 So.2d 696 (Fla. 3d DCA 1990), to the extent that they allow a probationer to have his or her probation revoked absent an inquiry by the trial court into ability to pay and a specific finding of willfulness. We approve the holdings of all the district courts of appeal except the Third District that before a trial court may properly revoke probation and incarcerate a probationer for failure to pay, it must inquire into the probationer’s ability to pay and make a determination of willfulness.
We also disapprove Gonzales and Guar-dado to the extent that they hold that the State need not present evidence on the probationer’s ability to pay and instead place the burden on the probationer to prove inability to pay by the heightened standard of clear and convincing evidence. We disapprove the decision of the First District in Martin v. State, 937 So.2d 714 (Fla. 1st DCA 2006), to the extent that it relieves the State of its burden to present evidence on the probationer’s ability to pay. Finally, we approve the decisions of the Second, Fourth, and Fifth District Courts of Appeal in Shepard v. State, 939 So.2d 311 (Fla. 4th DCA 2006), Blackwelder v. State, 902 So.2d 905 (Fla. 2d DCA 2005), and Osta v. State, 880 So.2d 804 (Fla. 5th DCA 2004), to the extent that they hold that the State bears the burden to present evidence on the probationer’s ability to pay.
It is so ordered.
PARIENTE, QUINCE, LABARGA, and PERRY, JJ., concur.
CANADY, C.J., dissents with an opinion.
LEWIS, J., dissents with an opinion, in which POLSTON, J., concurs.

. The 2008 version of section 948.06(5) at issue in this case is identical to the current 2011 version of the statute.

. A boot camp program is a form of incarceration. The Miami-Dade County Boot Camp Program, which Del Valle was required to complete in this case, is a program run by the Miami-Dade County Corrections and Rehabilitation Department as "a cost effective, population reducing, realistic reform program which selves the offender, and ultimately the community.” Miami-Dade County Corrections and Rehabilitation Department, Boot Camp, http://www.miamidade.gov/ corrections/boot_camp.asp (last visited November 4, 2011).

. We note that several district court cases involving the amended statute have held otherwise. However, the precedent relied upon by these cases appear to address (or in turn rely on cases addressing) the statute before it was amended in 1995. See Carter v. State, 23 So.3d 1238, 1247 (Fla. 4th DCA 2009) ("Appellant timely objected to a restitution award without a hearing. Additionally, the trial court did not consider appellant’s financial resources or ability to pay. For these reasons, we reverse the restitution order and remand for an evidentiary hearing.” (citing Filmore v. State, 656 So.2d 535 (Fla. 4th DCA 1995))), review denied 39 So.3d 320 (Fla. 2010), and cert. denied, - U.S. -, 131 S.Ct. 476, 178 L.Ed.2d 302 (2010); Exilorme v. State, 857 So.2d 339, 340 (Fla. 2d DCA 2003) ("Section 775.089(7) requires a hearing, before restitution is imposed, to determine the amount owed to the victim as well as the defendant’s ability to pay.... Subsections 775.089(6) and (7) require a hearing to determine both the defendant’s ability to pay and the amount owed.” (citing Allen v. State, 718 So.2d 1264 (Fla. 2d DCA 1998); Faulkner v. State, 620 So.2d 794 (Fla. 1st DCA 1993); Burch v. State, 617 So.2d 846 (Fla. 4th DCA 1993); Denmark v. State, 588 So.2d 324 (Fla. 4th DCA 1991))).

. Sections 985.437 and 985.0301, Florida Statutes (2011), pertain to restitution ordered in the juvenile context.

. See ch. 84-363, § 5, Laws of Fla.

. The Legislature has made only minor grammatical changes to the provision since enact-ingit in 1984.

. Section 948.06(4), Florida Statutes (1989), is identical to the current section 948.06(5) for purposes of this case. Subsection (4) was renumbered as the current subsection (5) in 1997. Ch. 97-299, § 13, Laws of Fla.

. In fact, all of the district courts, including those that hold that the State does not bear the burden to establish ability to pay, hold that the State must prove a willful violation of probation in other contexts. See Galego v. State, 27 So.3d 152, 154 (Fla. 3d DCA 2010) (“It is the State's burden to prove, by the greater weight of the evidence, that a probation violation is a willful and substantial one.”); Jenkins v. State, 963 So.2d 311, 313 (Fla. 4th DCA 2007) (“Probation may be revoked only upon a showing that the probationer deliberately and willfully violated one or more conditions of probation. Moreover, a violation which triggers a revocation of probation must be both willful and substantial, and the willful and substantial nature of the violation must be supported by the greater weight of the evidence. The state has the burden to establish that the probationer willfully violated the terms of his probation.” (citations and internal quotation marks omitted)); Stewart v. State, 926 So.2d 413, 414 (Fla. 1st DCA 2006) (“[T]he rule is: 'The trial court may revoke probation or community control only if the State proves by the greater weight of the evidence that the defendant willfully and substantially violated a specific condition of the probation or community control.' " (quoting Yates v. State, 909 So.2d 974, 974-75 (Fla. 2d DCA 2005))); Edwards v. State, 892 So.2d 1192, 1194 (Fla. 5th DCA 2005) ("The State carries the burden of proving by the greater weight of the evidence that a probationer has willfully and substantially violated her probation.”); Hines v. State, 789 So.2d 1085, 1086 (Fla. 2d DCA 2001) (“The State carries the burden of proving by the greater weight of the evidence that a probationer has willfully and substantially violated probation.”).

. See § 775.027(2), Fla. Stat. (2011) ("The defendant has the burden of proving the defense of insanity by clear and convincing evidence.”)

. See, e.g., Higgins v. State, No. A-7222, 2000 WL 329369, *6 (Alaska Ct.App. Mar. 29, 2000); Reese v. State, 26 Ark.App. 42, 759 S.W.2d 576, 577 (1988); People v. Walsh, 273 Ill.App.3d 453, 210 Ill.Dec. 126, 652 N.E.2d 1102, 1106 (1995); Turner v. State, 307 Md. 618, 516 A.2d 579, 583 (1986); State v. Fowlie, 138 N.H. 234, 636 A.2d 1037, 1039 (1994); State v. Parsons, 104 N.M. 123, 717 P.2d 99, 104 (App.1986); State v. Turner, No. COA01-134, 2002 WL 553656, *4 (N.C.Ct. App. Apr. 16, 2002); State v. Jacobsen, 746 N.W.2d 405, 408 (N.D.2008); State v. Hamann, 90 Ohio App.3d 654, 630 N.E.2d 384, 395 (1993); Miller v. Penn. Bd. of Prob. & Parole, 784 A.2d 246, 248 (Pa.Cmmw.Ct.2001); State v. LaRoche, 883 A.2d 1151, 1155 (R.I.2005); State v. Morton, No. 01-C-01-9301-CC, 1993 WL 335421, *2 (Tenn.Crim.App. Sept. 2, 1993); Wike v. State, 725 S.W.2d 465, 468 (Tex.Ct.App.1987); State v. Bower, 64 Wash.App. 227, 823 P.2d 1171, 1174-75 (1992); Ramsdell v. State, 149 P.3d 459, 464 (Wyo.2006).

. The affidavit of violation of probation indicated that Del Valle was unemployed at the time the affidavit was filed.